<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DONALD PRASS,<br><br>        Plaintiff,<br><br>    v.<br><br>STATE OF NEW JERSEY – NEW JERSEY DEPARTMENT OF CORRECTIONS,<br><br>        Defendant. | 18cv17389 (EP) (AME)<br><br>**OPINION** |

**PADIN, District Judge.**

Plaintiff Donald Prass is a Guyanese-born employee of Defendant State of New Jersey – New Jersey Department of Corrections' ("DOC"). He claims that he is the victim of national origin discrimination because he is paid less than his American-born colleagues. Presently before the Court is DOC's motion for summary judgment. D.E. 54. Prass opposes the motion. D.E. 59. The Court has considered the motion without oral argument. *See* Fed. R. Civ. P. 78(b); L.Civ.R. 78.1(b). For the following reasons, DOC's motion for summary judgment is **GRANTED**.

**I.   BACKGROUND**

Prass is a Guyanese-born American citizen. D.E. 55-1, Def.'s Statement of Undisputed Material Facts ¶ 1. He has been employed by DOC in various titles since 2000. *Id.* Prass was promoted to his current Accountant II title in January 2016. *Id.* ¶¶ 1, 2. Prass alleges that he, on an unspecified date, "discovered that his American-born comparators [at DOC] are paid a salary between $6,500 and $19,000 more than [he receives]." D.E. 1, Compl. ¶ 28. He further claims

that "[i]n or around early 2017, [he] filed a grievance[1] with [DOC's] Equal Employment Division ('EED') regarding the substantial pay differential between [Prass] and his American-born coworkers." *Id.* ¶ 32.  He alleges that on May 24, 2017, EED referred Prass's grievance to human resources because "it was not a discrimination matter, but a personnel issue." D.E. 1 ¶ 33.  Prass further avers that human resources never contacted him, and that "[DOC] has still not addressed [Prass's] significant pay differential." *Id.* ¶¶ 34, 35.

On December 19, 2018, Prass filed a two-count complaint alleging pay discrimination based on his national origin in violation of: (1) Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* (Count I); and (2) the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-1, *et seq.* (Count II).  D.E. 1.

On June 15, 2022, DOC filed its motion for summary judgment.  D.E. 54.  DOC requests that this Court enter summary judgment on Count I, *see* D.E. 54-1 at 5-10, and that it summarily dismiss Count II based on Eleventh Amendment-immunity principles, *see id.* at 13-14.  The limited evidentiary materials DOC has submitted in support of its motion include the following: (1) Prass's October 28, 2020 deposition transcript, D.E. 54-3; (2) the New Jersey Civil Service Commission-promogulated job specifications for the titles of Accountant I and Storekeeper 3, D.E.s 54-5, 54-6; and (3) the July 21, 2021 deposition transcript of Elizabeth Whitlock, who at the time of her testimony, was DOC's director of human resources, D.E. 54-7.

Prass opposed the motion on July 6, 2022.  D.E. 59.  Prass's opposition includes the following additional evidentiary materials: (1) the New Jersey Civil Service Commission-promogulated job specifications for the title of Accountant II; (2) a proposed DOC organizational chart that shows the reporting hierarchy associated with various civil service titles, including

---

[1] Neither Prass nor DOC has provided a copy of this grievance to the Court.

2

Accountant I, II, and III; and (3) Prass's resume.  D.E. 59-3.  DOC submitted its reply on July 12, 2022.  D.E. 61.

## II.     LEGAL STANDARD

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment.  *Id.*  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)).  In other words, a court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter, but rather "to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (internal quotation marks omitted).  To withstand a properly supported motion for summary judgment, the nonmoving party must identify

specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

### III.   ANALYSIS

#### A.  Summary Judgment on Plaintiff's Title VII Claim is Granted

Count I of Prass's complaint alleges that because he is Guyanese-born, he was paid $6,500 to $19,000 less than other DOC employees who did comparable accounting work, in violation of Title VII. This claim is subject to the burden-shifting analysis created by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To prevail on a Title VII claim, a plaintiff initially bears the burden of establishing, by a preponderance of the evidence, a *prima facie* case of national origin discrimination. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). To meet his initial burden, a plaintiff must demonstrate that "(1) [he] belongs to a protected class; (2) [he] was qualified for the position; (3) [he] was subject to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802). Under the *McDonnell Douglas* framework, if the plaintiff succeeds in establishing a *prima facie* case, the burden shifts to the defendant employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Sarullo*, 352 F.3d at 797 (quoting *McDonnell Douglas*, 411 U.S. at 802).

The employer may satisfy this burden by introducing evidence which, taken as true, would allow the factfinder to conclude that there was a nondiscriminatory reason for the unfavorable employment decision. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993); *Burton v. Teleflex, Inc.*, 707 F.3d 417, 426 (3d Cir. 2013). The employer need not prove, however, that the tendered reason actually motivated the decision. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). In fact, the burden on the defendant at this second stage of the analysis has been described as "relatively light." *Burton*, 707 F.3d at 426. The burden remains on the plaintiff to demonstrate that he has been the victim of intentional discrimination. *Burdine*, 450 U.S. at 256. Thus, if the defendant proffers evidence of a nondiscriminatory reason, the burden shifts back to the plaintiff to "provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination." *Burton*, 707 F.3d at 426-27. To show pretext, the plaintiff must point to evidence that would reasonably permit the factfinder to either "(1) disbelieve the employer's articulated reasons or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* at 427 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir.1994)).

Applying this three-part framework to Prass's Title VII discrimination claim, the Court concludes that the record lacks evidence which would permit a reasonable factfinder to decide in favor of Prass at trial. Prass, to reiterate, claims that he was paid less than his American-born "comparators" because he was born in Guyana. He, however, has failed to present any evidence to the Court detailing his own salary,[2] much less provide any evidence or other concrete

---

[2] That Court notes that during his deposition, Prass testified that his salary upon being promoted to the Accountant II title in January 2016 was $53,910.34, and that his salary in that role was $69,840.54 as of October 28, 2020. D.E. 54-3 at p. 28-29. This fact, however, has not been independently introduced by either Prass or DOC in their summary judgment papers.

information about the nationalities and/or actual salaries received by other DOC employees with the title of Accountant II.  Prass, in other words, has failed to establish, through evidentiary proofs, that he was paid a lower salary than other American-born individuals employed by DOC as Accountant IIs.  Prass likewise proffers no evidence which demonstrates that he was paid less than his American-born "comparators" *because* he is Guyanese-born.  Indeed, he testified that no one at DOC ever said, texted, or emailed anything negative to him about his national origin.  *See* D.E. 55-1 ¶¶ 9, 10.  Prass's assertion that there is a causal nexus between his alleged pay disparity and his national origin is, in short, purely conclusory.  Prass has accordingly failed to establish a *prima facie* case of discrimination.  *See Freeman v. Harris*, 716 F. App'x 132, 134 (3d Cir. 2018) (affirming prejudicial dismissal of plaintiff's Title VII complaint where plaintiff, "[a]t no point in the District Court or on appeal . . . explained why she believes her employer's 2008 or 2011 decisions occurred under circumstances that give rise to an inference of unlawful discrimination, as she must to state a *prima facie* [Title VII] case.").

   Moreover, even assuming Prass could point to circumstances that raise an inference of a discriminatory motivation for DOC's purported failure to pay Prass as much as his American-born colleagues, DOC has come forward with evidence from which a reasonable factfinder could conclude that Prass's salary was calculated based on legitimate, non-discriminatory reasons.  In particular, DOC's then-director of human resources, Elizabeth Whitlock, testified during her deposition about the manner in which the salary for civil service titles, like Accountant II, are calculated.  She explained that the calculation is driven by the New Jersey Civil Service Commission and the New Jersey Administrative Code.  *See* D.E. 54-7 at 12 ("What determines the salaries of employees?  . . . [E]ssentially, it's administrative code, Civil Service Commission, it's 4A.  We can't go against their policy and their rulings on how salaries are determined.").  Ms.

Whitlock further testified that "[a] lot of variables can go into the determination of salary.  It would be education, it could be experience, it could be . . . lack of the ability to get a viable candidate pool."  *Id.* at 21-22.  "[I]t could be a fiscal issue."  *Id.* at 28.  It could be that the "promotional advancement pay adjustment" factors in, and "then your new salary is determined based on your current salary."  *Id.* at 32; *accord id.* at 64 ("when salaries are determined, it's based upon that specific person's former State history, former State titles, and applying the administrative code rules to those titles and salaries, amount of time in those salaries to determine the new salary in their current title or the title they're going into.").  Employment decisions guided by the State's civil service rules and regulations have been found to be legitimate and non-discriminatory.  *See*, *e.g.*, *Scutchins v. New Jersey*, Civil Action No. 12-5855 (SRC), 2014 WL 6991908, at *8 (D.N.J. Dec. 10, 2014) (non-selection of plaintiff for civil service position based on her low ranking on the employment opportunity eligibility list constituted a legitimate, non-discriminatory reason); *Williams v. New Jersey Trenton Psychiatric Hosp.*, Civil Action No. 04-06041(FLW), 2007 WL 2893378, at *5-8 (D.N.J. Sept. 28, 2007) (employer had legitimate reason for not offering position to plaintiff pursuant to the provisions within the New Jersey Administrative Code governing civil service titles).

Furthermore, Prass points to no evidence from which a reasonable factfinder could infer that DOC's explanation for the manner in which it calculated Prass's salary is pretextual.  *See Jones v. Sch. Dist.*, 198 F.3d 403, 414 (3d Cir. 1999) (affirming entry of summary judgment on plaintiff's Title VII claim where plaintiff "presented no evidence from which a jury could conclude that the [employers] articulated reasons for its adverse employment actions were a pretext for discrimination."); *Shah v. New Jersey Off. of Homeland Sec. & Preparedness*, No. CV 15-3233(FLW), 2018 WL 1535282, at *11 (D.N.J. Mar. 29, 2018).  ("outside of his own, subjective

7

beliefs, Plaintiff fails to adduce evidence that Defendant's decision to deny Plaintiff a promotion was motivated by race, rather than a determination that Plaintiff was unqualified . . . . Plaintiff thus lacks the requisite evidence of pretext to defeat summary judgment."). For these reasons, the Court will grant DOC's motion for summary judgment on Prass's Title VII claim.

### B. Prass's NJLAD Claim is Dismissed

DOC, in its summary judgment motion, also seeks dismissal of Prass's NJLAD claim, asserting that this Court lacks jurisdiction over that claim based on Eleventh Amendment immunity. *See* D.E. 61 at 5-7. The Court agrees.

The Eleventh Amendment to the United States Constitution provides that, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." As a general proposition, a suit by private parties seeking to impose liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the State itself or by federal statute. *See, e.g., Edelman v. Jordan*, 415 U.S. 651, 663 (1974). Absent an explicit waiver of Eleventh Amendment immunity, a State may not be sued in the federal courts. *Id.* at 673. Moreover, Eleventh Amendment immunity extends to litigation against departments and agencies of the State. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977); *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir.1981).

Importantly, the text of NJLAD does not contain language that waives the State's Eleventh Amendment immunity in federal court. *See Garcia v. Richard Stockton Coll. of New Jersey*, 210 F. Supp. 2d 545, 550 (D.N.J. 2002) ("Although the NJLAD clearly identifies the State as a potential defendant, *see* N.J. Stat. Ann. § 10:5-5(e), and authorizes private suits "in Superior Court," *id.* §

8

10:5-13, it makes no mention of federal court. I must conclude, therefore, that New Jersey has not stated 'by the most express language' that it is open to private suits under the NJLAD in federal court.") (quoting *College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd.*, 527 U.S. 666, 678 (1999)); *accord Rudolph v. Adamar of New Jersey*, 153 F. Supp. 2d 528, 542 (D.N.J. 2001).

Here, it is undisputed that DOC is an agency of the State of New Jersey, and thus, Eleventh Amendment immunity applies to Prass's NJLAD claim against it. *See Garcia*, 210 F. Supp. 2d at 550 ("a plaintiff may not sue the State of New Jersey, or its alter egos, under the NJLAD in federal court."). Prass's NJLAD claim against DOC must accordingly be dismissed. *See Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 100 (1984); *Chee-Wah v. Maurer*, 663 F. App'x 194, 198 (3d Cir. 2016) (affirming District Court's dismissal of plaintiff's NJLAD claim "on the basis of Eleventh Amendment immunity.").

### IV.     CONCLUSION

For the foregoing reasons, DOC's motion for summary judgment, D.E. 54, is granted. Prass's complaint is dismissed. An appropriate Order accompanies this Opinion.

Dated: January 19, 2023

/s/ Evelyn Padin
Evelyn Padin, U.S.D.J.

9